IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18–cv–00499–RM–KMT

RODNEY JARAMILLO, personally and as Personal Representative of the Estate of
Joseph Jaramillo, deceased,

      Plaintiff,

v.

DEPUTY CHRISTIAN CRAIN, in his individual capacity,
DEPUTY NICHOLAS CARDINAL, in his individual capacity, and
SHERRY BACA, in her individual capacity,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

      This case comes before the court on "Defendant Sherry Baca's Motion to Dismiss" (Doc. No. 26 [Baca's Mot.], filed May 11, 2018). Plaintiff filed his response on June 20, 2018 (Doc. No. 39 [Resp. Baca's Mot.]), and Defendant Baca filed her reply on June 29, 2018 (Doc. No. 41 [Baca's Reply]).

      Also before the court is the "Motion to Dismiss" filed by Defendants Crain and Cardinal (Doc. No. 29 [Crain's Mot.], filed May 14, 2018). Plaintiff filed his response on June 20, 2018 (Doc. No. 40 [Resp. Crain's Mot.]), and Defendants Crain and Cardinal filed their reply on July 3, 2018 (Doc. No. 42 [Crain's Reply]).

## STATEMENT OF THE CASE

Plaintiff filed this case on February 27, 2018, asserting claims against Deputies Christian Crain and Nicholas Cardinal and EMT Sherry Baca. (Doc. No. 1 [Compl.].) Plaintiff sues the defendants personally and as personal representative of the Estate of Joseph Jaramillo, who was an inmate housed at the Pueblo County Detention Facility. (*Id.* at 1.)

Plaintiff alleges on February 23, 2016, Defendant Crain yelled at Joseph Jaramillo ("Mr. Jaramillo") to return to his bunk from the shower area in his dorm. (*Id.*, ¶ 10, 11.) Plaintiff states Mr. Jaramillo flipped off Deputy Crain and proceeded to undress for his shower. (*Id.*, ¶ 11.) Plaintiff alleges that Mr. Jaramillo stepped into the shower, and Deputy Crain again yelled at him to return to his bunk. (*Id.*) Plaintiff alleges Defendant Crain "enlisted the help of Deputy Cardinal to take Mr. Jaramillo out" and the two defendants "stormed the shower area." (*Id.*, ¶ 13.) Plaintiff alleges Defendants Crain and Cardinal "grabbed Mr. Jaramillo aggressively and both took him to the ceramic floor" where Mr. Jaramillo's "head impacted the floor and the concrete area." (*Id.*) Plaintiff contends Defendants Crain and Cardinal continued to assault Mr. Jaramillo even after he lost consciousness. (*Id.*) Plaintiff claims "Defendants Crain and Cardinal continued to assault the compliant Mr. Jaramillo with physical force." (*Id.*) Mr. Jaramillo allegedly requested assistance from medical four hours later with complaints of "unrelenting head pain." (*Id.*, ¶ 15.) Plaintiff states a treating nurse ignored Mr. Jaramillo's "swelling head injury" and gave him ibuprofen. (*Id.*)

Plaintiff states twelve hours later, Defendant Baca responded to Mr. Jaramillo's continued complaints of "extraordinary head pain." (*Id.*, ¶ 16.) Plaintiff alleges Ms. Baca "did a cursory and generally indifferent assessment" that revealed Mr. Jaramillo could not place his

chin to his chest.  (*Id.*)  Plaintiff claims the inability to put one's chin to his chest is "medical

emergency, indicative of swelling and possible bleeding inside the brain" and that Defendant

Baca ignored those signs by giving Mr. Jaramillo more ibuprofen and then leaving.  (*Id.*)

Plaintiff alleges Defendants Baca and Crain subsequently observed Mr. Jaramillo

screaming for help at 4:45 a.m. on February 24, 2016, and elected to do nothing.  (*Id.*, ¶ 17.)  Mr.

Jaramillo allegedly collapsed in his cell ten minutes later.  (*Id.*)  Plaintiff alleges ten minutes after

Mr. Jaramillo collapsed, Defendant Baca entered the cell to check Mr. Jaramillo's blood sugar.

(*Id.*)  Plaintiff states Mr. Jaramillo was unconscious, suffering respiratory failure, and

unresponsive.  (*Id.*)  Mr. Jaramillo never regained consciousness and later died on February 29,

2016, when he was removed from life support.  (*Id.*, ¶ 18.)  Plaintiff states Mr. Jaramillo died of

a subdural hematoma and associated extensive, untreated brain bleeding and swelling.  (*Id.*)

Plaintiff filed this survival action pursuant to 42 U.S.C. § 1983[1] asserting one claim for

excessive force under the Eighth Amendment against Defendants Crain and Cardinal and one

claim for failure to provide medical care and treatment under the Eighth Amendment against

Defendants Crain and Baca.  (*Id.* at 7–10.)  All defendants move to dismiss Plaintiff's claims for

failure to state a claim upon which relief can be granted.  (*See* Baca's Mot.; Crain's Mot.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss

a claim for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

_____

[1] In her motion, Defendant Baca averred that Plaintiff's claims are brought pursuant to § 1983 as
a survival action rather than a wrongful death action.  (Baca's Mot. at 4-6.)  In response, Plaintiff
concedes that this is a survival action  (Resp. Baca's Mot. at 1.)

parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a

cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits and documents incorporated into the complaint by reference. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citations omitted). "[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quotations omitted).

## ANALYSIS

Defendants argue that Plaintiff's claims are barred by the applicable statute of limitations. (*See* Baca's Mot. at 7–10; Crain's Mot. at 3–5.)

In a § 1983 action, state law governs issues regarding the statute of limitations and tolling, although federal law governs the determination of when a § 1983 action accrues. *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995). Plaintiff's civil rights claim under § 1983 is subject to a two-year statute of limitations. *Blake v. Dickason*, 997 F.2d 749, 751 (10th Cir. 1993) (citing Colo. Rev. Stat. § 13–80–102(1)(i)). "A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993). When the alleged injury is the violation of a constitutional right, the court must locate the violation in time to determine when the claim accrued. *Smith v. City of Enid By & Through Enid City Comm'n*, 149 F.3d 1151,

1154 (10th Cir. 1998).  A § 1983 survival action brought after the plaintiff's death "is essentially the assertion of the cause of action that the deceased would have had had he lived, requesting damages for violation of the decedent's rights."  *Sager v. City of Woodland Park*, 543 F. Supp. 282, 288 (D. Colo. 1982).

Defendants argue, and the court agrees, that Plaintiff's claims accrued, at the latest, on February 24, 2016, when Plaintiff alleges the defendants violated Mr. Jaramillo's rights by using excessive force or by failing to treat his head injury.  (Baca's Mot. at 10; Crain's Mot. at 4–5.)  District Judge Philip A. Brimmer recently addressed the issue of accrual of a § 1983 survival action in *Estate of Roemer v. Shoago*, Civil Action No. 14–cv–01655–PAB–NYW, 2017 WL 4278503 (D. Colo. Sep. 27, 2017).[2]  In that case, James Roemer was an inmate at Sterling Correctional Facility.  *Id.* at *2.  Mr. Roemer died at the hands of one of his cellmates, whom Mr. Roemer had reason to believe was going to harm him at least ten days before his murder.  *Id.* Mr. Roemer asked jail staff to be moved to a different cell, but his request was immediately denied.  *Id.* Mr. Roemer was strangled to death by his cellmate on June 13, 2012.  *Id.* at *3.  Mr. Roemer's estate filed suit nearly two years after Mr. Roemer's death, asserting a claim that Mr. Roemer's Eighth Amendment rights were violated on a failure to protect theory. *Id.*

Judge Brimmer explained that,

Because the claim that plaintiff brings is a § 1983 survival claim, it is the same claim that could have been brought by Mr. Roemer, had he survived. "[T]he decedent's estate, by necessity, stands in the decedent's shoes in a state survival action."  *Espinoza v. O'Dell*, 633 P.2d 455, 466 (Colo. 1981) (citing *Publix Cab Co. v. Colorado National Bank*, 338 P.2d 702 (Colo. 1959)).  Thus, plaintiff's claim did not, as plaintiff argues, accrue separately at the time the estate became aware of the relevant facts.  Rather, plaintiff's claim accrued when Mr. Roemer's

---

[2] This case is currently on appeal to the United States Court of Appeals for the Tenth Circuit, Case No. 17-1418.

> claim accrued and is "brought in spite of the injured party's death" on the basis of an "action already accrued" by Mr. Roemer. *Espinoza*, 633 P.2d at 466 (internal quotation marks omitted).

*Id.* at 5 (citation to court docket omitted). Judge Brimmer held that the plaintiff's claim accrued when Mr. Roemer knew or had reason to know that prison officials disregarded the risk to his safety two weeks before his murder, when he requested to be moved out of his cell, and the request was denied. *Id.* at 6.

In Plaintiff's responses to the Motions to Dismiss, he asserts that "[t]he injury that is the basis of Plaintiff's action is Mr. Jaramillo's preventable death" (Resp. Baca's Mot. at 5; Resp. Crain's Mot. at 5) and that Mr. Jaramillo did not know the existence of any injury until, at the earliest, February 29, 2016–*i.e.*, the date Mr. Jaramillo died (Resp. Baca'a Mot. at 5, 10–11; Resp. Crain's Mot. at 5, 13–14). Plaintiff further asserts "prior to Mr. Jaramillo's death, there was no injury caused by any Defendant that he could have been aware of, or that he could have reasonably expected to be aware of." (Resp. Baca's Mot. at 7–8; Resp. Crain's Mot. at 11.)

Regarding the excessive force claim, Plaintiff ignores that "the *injury* in a § 1983 case is the *violation of a constitutional right*, [and, therefore,] such claims accrue when the plaintiff knows or should know that his or her constitutional rights have been violated." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999) (emphasis added) (citing *Smith*, 149 F.3d at 1154). Here, Plaintiff knew or should have known of the defendants' alleged excessive force, which is the constitutional violation, at the time Defendants Crain and Cardinal allegedly grabbed him aggressively and then took him to the ceramic floor of a shower stall where his "head impacted the floor and the concrete area." (Compl., ¶¶ 10, 13.) Moreover, Plaintiff

concedes that "[c]ertainly, the excessive force action of Defendants . . . which set that injury into motion occurred on February 23, 2016." (Resp. Crain's Mot. at 5.)

Regarding his claim for failure to provide medical care and treatment, Plaintiff acknowledges the conduct alleged against Ms. Baca "all took place on February 24, 2016." (Resp. Baca's Mot. at 5.) As alleged in the Complaint, Mr. Jaramillo knew at that time that he had "severe head pain" for over 16 hours that was allegedly ignored by Ms. Baca. (Compl., ¶ 16.) Specifically, Plaintiff alleges that four hours after Mr. Jaramillo allegedly was assaulted, "Mr. Jaramillo was adamant about the pain in his head and informed the nurse it was affecting his vision." (*Id.*, ¶ 15.) Twelve hours later, Mr. Jaramillo allegedly "described his head pain to Defendant Baca as 'throbbing' and 'not similar to any headache ever had before.' " (*Id.*, ¶ 16.) After Defendant Baca purportedly "ignored these various clear indications of a medical emergency involving head injury . . . Mr. Jaramillo continued complaining to anyone who would listen, throughout the next six hours." (*Id.*, ¶¶ 15–16.) Indeed, Mr. Jaramillo reportedly "told his cell mate he was worried he was dying and that he couldn't see" all while additional requests for medical assistance from Defendants Baca and Crain were ignored. (*Id.*, ¶ 17.]) Thus, it is clear Mr. Jaramillo was aware as of February 24, 2016, that he was purportedly being denied care for a serious medical issue. That he did not know the full extent of his illness is of no consequence. *See Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue."); *see also Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) ("A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run").

Plaintiff also argues, relying on the Seventh Circuit's opinion in *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013) (as referenced in *Richardson v. Stock*, Civil Action No. 13–cv–00606–RM–KMT, 2014 WL 7530320, at *5 (D. Colo. Feb. 10, 2014), *report and recommendation adopted as modified*, No. 13–CV–00606–RM–KMT, 2015 WL 160949 (D. Colo. Jan. 13, 2015), that the knowledge of a physical injury and not the underlying constitutional violation is dispositive to the accrual analysis for purposes of the claim for failure to provide medical care and treatment. (Resp. Crain's Mot. at 9.) *Devrbrow* involved allegations from an inmate that a prison doctor delayed treating his prostate cancer because he did not order a biopsy until after the cancer had metastasized. *Id.* at 705 F.3d at 766. The Seventh Circuit concluded the claim could not have accrued until the inmate received his cancer diagnosis because he could not have known of the injury any sooner. *Id.* at 770. This reasoning, however, is dramatically inconsistent with the firmly established case law in the Tenth Circuit, which instead places the focus on the constitutional violation.[3] *See Beck*, 195 F.3d at 557.

Plaintiff also relies on *Lawson v. Okmulgee Cnty. Criminal Justice Auth.*, 726 F. App'x 685 (10th Cir. Feb. 28, 2018), to assert that denial of medical treatment claims accrue at the time of diagnosis. In *Lawson*, the estate of an inmate sued several individuals and entities claiming they failed to diagnose and treat stage four terminal cancer. *Id.* at 687. Plaintiff argues the *Lawson* Court "did not treat the period during which [the decedent's] complaints were ignored

_____

[3] In *Richardson*, this court, citing *Devbrow* determined that the plaintiff's claim for deliberate indifference was not barred by the statute of limitations where the defendant's "decision to take Plaintiff off his sliding-scale insulin, failure to provide Plaintiff with preventative foot care, and failure to follow-up with Plaintiff three weeks after his February 7, 2011 appointment—all took place in February 2011," but the plaintiff "plainly allege[d] that these actions caused, in whole or in part, the amputation of his left leg below the knee" and the "amputation did not take place until March 26, 2011." *Richardson*, 2014 WL 7530320, at *5. This court's reliance on *Devbrow* was misplaced and contrary to Tenth Circuit precedent.

by medical staff as the dates of claim accrual" and "instead found that the Eighth Amendment claims accrued when [the decedent] learned he had stage 4 terminal cancer." (Resp. Crain Mot. at 9.) However, the *Lawson* court was clearly stating a possible ceiling for accrual and not a floor. The Court reasoned as follows:

> The crux of the alleged constitutional violations—failure to diagnose and treat Mr. Perry's serious medical conditions—is that defendants provided constitutionally inadequate treatment and diagnostics. Although the nature of the alleged violations is such that there is no single accrual date, we need not decide the exact dates because we conclude the estate's claims accrued *at the latest* when Mr. Perry learned he had cancer in June 2013. Perhaps Mr. Perry should have known that his constitutional rights were violated before the diagnosis, particularly when the painful excrescence on his neck grew from a mere "nodule" in December 2010 to a "golf ball-sized lump" by September 2011. At the very latest, however, Mr. Perry should have known that he had a possible claim against defendants for deliberate indifference in June 2013, when he was diagnosed with stage four terminal cancer. Mr. Perry's diagnosis brought into focus the profound constitutional inadequacy of defendants' antecedent treatment and diagnoses, or lack thereof, and we therefore hold that the estate's claims accrued by June 2013.

*Id.* at *11–12 (emphasis in original). Thus, *Lawson* actually supports the argument that Mr. Jaramillo had imputed knowledge sufficient to trigger accrual at the time his physical injury became more severe between February 23 and 24, 2016.

Just as in *Roemer*, this court finds that Plaintiff's claims, personally and as personal representative of Joseph Jaramillo's estate, accrued when Joseph Jaramillo's claim accrued. As to the excessive force claim, the claim accrued when Mr. Jaramillo sustained injuries and was aware of their existence on February 23, 2016. As to the claim for denial of adequate medical treatment, the claim accrued, at the latest, when Defendants Baca and Crain failed to provide adequate medical treatment to Mr. Jaramillo "in the early morning hours of February 24, 2016" by allegedly ignoring Mr. Jaramillo's requests for medical assistance. (Compl., ¶ 31.)

Thus, Plaintiff would have had to file his excessive force claim no later than Friday, February 23, 2018, and his denial of medical treatment claim no later than Monday, February 26, 2018[4], the two-year anniversary dates of the claims' accrual. Plaintiff waited until February 27, 2018, to file this case—four days past the statute of limitations deadline for the excessive force claim and one day past the statute of limitations deadline for the denial of medical treatment claim.

Accordingly, Plaintiff's claims are barred by the applicable statute of limitations and should be dismissed.

**WHEREFORE**, for the foregoing reasons, this court respectfully

**RECOMMENDS** "Defendant Sherry Baca's Motion to Dismiss" (Doc. No. 26) and the "Motion to Dismiss" filed by Defendants Crain and Cardinal (Doc. No. 29) be **GRANTED** and that this case be dismissed in its entirety, with prejudice, as barred by the statute of limitations.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

---

[4]Because February 24, 2018, was a Saturday, pursuant to Fed. R. Civ. P. 6(a), the period continued to run to Monday, February 26, 2018, which was the last day that was not a Saturday, Sunday, or legal holiday. *See, e.g.*, *Williams v. Aragon*, Civil Action No. 13-cv-02377-REB-KMT, 2014 WL 4854979, at *9 (D. Colo. Aug. 18, 2014).

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (stating that a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at 1059–60 (stating that a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (holding that cross-claimant had waived its right to appeal those portions of the ruling by failing to object to certain portions of the magistrate judge's order); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (holding that plaintiffs waived their right to appeal the magistrate judge's ruling by their failure to file objections). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (stating that firm waiver rule does not apply when the interests of justice require review).

Dated this 26th day of February, 2019.

BY THE COURT:

_____

Kathleen M. Tafoya
United States Magistrate Judge