# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
# Judge Raymond P. Moore

Civil Action No. 1:18-cv-0499-RM-KMT

Rodney Jaramillo, as personal representative
of the estate of Joseph Jaramillo (deceased),

    *Plaintiff*,

    *v.*

Deputy Christian Crain,
Deputy Nicholas Cardinal, and
Sherry Baca,

    *Defendants*.

---

# ORDER

---

This survival action—brought by the brother of deceased inmate Joseph Jaramillo—alleges violations of the Eighth Amendment bar against cruel and unusual punishment. As alleged, on February 23, 2016, Defendants Crain and Cardinal, correctional officers at the Pueblo County Detention Facility, assaulted Jaramillo in the shower until he became unconscious. Jaramillo regained consciousness and requested medical assistance for "unrelenting head pain." On February 24, 2016, Defendant Sherry Baca, an EMT, examined him and noted symptoms consistent with a medical emergency, but she limited treatment to ibuprofen. Later that day, Jaramillo screamed for help, collapsed in his cell, and was taken to the hospital. He never awoke and later died on February 29, 2016. Jaramillo's estate filed on February 27, 2018, alleging excessive force and deliberate indifference, and Defendants have moved to dismiss on statute of limitation grounds. The only question for the Court is when Jaramillo's causes of action accrued.

## I. BACKGROUND

### A. Allegations

On February 23, 2016, inmate Joseph Jaramillo took a shower despite several orders to return to his bunk. (Compl. ¶¶ 10–11, ECF No. 1.) In fact, he flipped off prison guard Crain, causing guards Crain and Cardinal to "take [ ] Jaramillo out . . . for his original refusal of the first order to return to his bunk, and in retaliation for flipping Deputy Crain off." (*Id.* ¶¶ 11–12.) Even though Jaramillo had "stopped the shower and began putting his clothes back on to comply," and had "begun to walk back to his bunk as instructed," the guards "stormed the shower area[,] . . . grabbed [ ] Jaramillo aggressively and both took him to the ceramic floor." (*Id.* ¶¶ 11, 13.) Jaramillo's head hit the floor and the concrete area of a nearby stall, and he lost consciousness. (*Id.*) The guards then handcuffed Jaramillo and, ignoring his complaints of head pain, escorted him out of the dorm to an attorney room with no cameras. (*Id.* ¶ 14.) Four hours later, Jaramillo "requested assistance from medical for his unrelenting head pain. . . . Jaramillo was adamant about the pain in his head and informed the nurse it was affecting his vision." (*Id.* ¶ 15.)

Twelve hours after that, "[d]espite [Jaramillo's] complaint of severe head pain that had [by then] persisted over 16 hours . . . , Defendant Baca did a cursory and generally indifferent assessment." (*Id.* ¶ 16.) Jaramillo described his head pain as "throbbing" and "not similar to any headache [he had] ever had before." (*Id.*) He was not able to touch his chin to his chest—a common symptom of a medical emergency such as swelling or bleeding in the brain. (*Id.*) But Baca did nothing except give Jaramillo ibuprofen and end the visit. (*Id.*)

Over the next six hours, Jaramillo "continued complaining to anyone who would listen." (*Id.* ¶ 17.) "He told his cell mate he worried he was dying and that he couldn't see. At 4:45 am on February 24, he began banging on his cell window screaming for help." (*Id.*) Baca and Crain

were present but initially did nothing. (*Id.*) "Ten minutes later, Jaramillo collapsed in his cell. Ten minutes after that, Defendant Baca entered the cell 'to check his blood sugar.' Jaramillo was unconscious, suffering respiratory failure, and nonresponsive. He never regained consciousness." (*Id.*) On February 29, 2016, doctors removed Jaramillo from life support, and he died of a subdural hematoma and associated extensive untreated brain bleeding and swelling. (*Id.* ¶ 18.)

**B. Procedural Posture and the Parties' Positions**

Jaramillo's estate filed this suit for relief pursuant to 42 U.S.C. § 1983 for alleged violations of his Eighth Amendment rights. (*See generally id.*) In Claim One, he alleges excessive force by Crain and Cardinal flowing from the shower takedown. (*Id.* ¶¶ 19–24.) Claim Two squares against Crain and Baca for their alleged deliberate indifference to "critical and time-sensitive life-saving medical treatment [that Jaramillo's] symptoms clearly required." (*Id.* ¶ 30.) Defendants filed motions to dismiss solely on statute of limitation grounds (ECF Nos. 26, 29, 41, 42), to which Jaramillo responded (ECF Nos. 39, 40). Magistrate Judge Tafoya recommended that the motions be granted. (ECF No. 59.) Jaramillo timely objected (ECF No. 60), and Defendants responded (ECF No. 61).

In their briefing on the motions and objection, the parties vehemently disagree on the date Jaramillo's causes of action accrued. Defendants' positions are straightforward: Because "Jaramillo had imputed knowledge sufficient to trigger accrual at the time his physical injury became more severe between February 23 and 24, 2016" and "deliberate indifference to his requests for critical medical assistance" occurred during the same timeframe (ECF No. 26, at 8; ECF No. 42, at 5), Defendants maintain that the very latest timely day for filing would have been February 26, 2018.[1] Jaramillo's theories are more complicated. On Claim One, despite his

---
[1] As Baca points out, February 24, 2018 was a Saturday. Therefore, if she is correct as to the day the cause of action against her accrued, pursuant to Fed. R. Civ. P. 6(a), the period continued to run to Monday, February 26,

3

allegations that he consciously and repeatedly requested medical attention for the extraordinary symptoms he endured following the shower assault, Jaramillo stresses that he lost consciousness, was disoriented, and—until the moment of his death—was not "aware that the guards had caused him a [non-*de minimis*] head injury." (ECF No. 60, at 6–7.) On Claim Two, Jaramillo asserts that no one knew the cause of his death—or that Baca and Crain's denial of care contributed to it—until his autopsy. (*Id.* at 9–10.)[2] Put another way, before he fell unconscious for the final time, he alleges that he had no information that brought into focus the constitutional inadequacy of Baca's and Crain's lack of treatment. (*Id.* at 11–16.)

## II. ANALYSIS

The Court reviews timely objections to a magistrate judge's recommendation *de novo*. Fed. R. Civ. P. 72(b)(3). The legal standard applicable here is established. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When considering whether an action is time-barred, "[i]f the answer is apparent on the face of the complaint, this issue may be resolved on a motion to dismiss." *Dummar v. Lummis*, 543 F.3d 614, 619 (10th Cir. 2008); *see also Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir. 1980) ("While the statute of limitations is an affirmative defense, when the dates given in the complaint make clear that the right sued upon

---

2018, which was the last day in the two-year limitations period that was not a Saturday, Sunday, or legal holiday.

[2] While the objection makes much about Jaramillo not knowing the cause of his injury until an autopsy was performed, the complaint makes no reference to an autopsy or any other potential cause of his injury other than the shower incident.

4

has been extinguished, the plaintiff has the burden of establishing a factual basis for tolling the statute.").

This survival[3] action alleges constitutional violations and seeks redress under 42 U.S.C. § 1983, which includes no limitations period. Therefore, while the characterization of the type of claim at issue for limitations purposes remains a federal question, state law governs the relevant suit-barring deadline. *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985). Colorado has filled in this gap: "All actions upon liability created by a federal statute where no period of limitation is provided in said federal statute . . . must be commenced within two years after the cause of action accrues, and not thereafter." Colo. Rev. Stat. Ann. § 13-80-102(1)(g) (language rearranged). "Section 1983 claims accrue, for the purpose of the statute of limitations, when the plaintiff knows or has reason to know of the injury which is the basis for the action." *Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994); *see also Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) (identical language). Under this test, "a plaintiff need not understand the legal basis of his claim before the statute of limitations will begin to run." *Coleman v. Morall*, 64 F. App'x 116, 119 (10th Cir. 2003) Nor must he "know the full extent of his injuries." *Indus Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). Rather, "a civil rights action accrues when *facts* that would support a cause of action are or should be apparent." *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir. 1995) (emphasis supplied; internal quotations omitted). In survival actions, courts test accrual as if the deceased had survived. *See* Colo. Rev. Stat. Ann. § 13-20-101(2); *see also, e.g.*, *Sager v. City of Woodland Park*, 543 F. Supp. 282, 288 (D. Colo. 1982) ("[A] § 1983 survival action, relying on the incorporation of state survival law through [42 U.S.C.] § 1988, is essentially the assertion of the

---

[3] The parties agree that this is a survival action on behalf of Joseph Jaramillo, rather than a wrongful death claim by his family. (ECF No. 60, at 1; ECF No. 61, at 5.)

cause of action the deceased would have had if he lived, requesting damages for violation of the decedent's rights."). The claims at issue here sound in two separate Eighth Amendment theories—excessive force and deliberate indifference—and the Court addresses whether Jaramillo knew or had reason to know of the facts that form the basis for each.

### A. Claim One (for the shower takedown) is time-barred.

Prison officials' use of excessive force against inmates may violate the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (internal citations omitted). On Claim One, Jaramillo urges "that in the Tenth Circuit, there *is no Eighth Amendment claim for excessive force* until and unless an injury is more than *de minimis*." (ECF No. 60, at 6 (emphasis in original; citing *Norton v. City of Marietta*, 432 F.3d 1145, 1156 (10th Cir. 2005)).) Here, using the *de minimis* inquiry as his only guidance, Jaramillo argues that his allegations show that he was not aware of any injury above that low threshold more than two years before filing suit:

> [h]aving been rendered unconscious by the assault, and unaware of any injury caused thereby, he could not have been aware of any Eighth Amendment excessive force claim (nor any non-*de-minimis* injury) that existed against Defendants Crain and Cardinal prior to his death. To permit any other result would be to unjustly allow Defendants to benefit from the fact that their assault rendered Mr. Jaramillo both immediately unconscious and thereafter disoriented.

(*Id.* at 8.) This position misses the mark both legally and factually.

Since *Norton*, and long before this case was filed, the Supreme Court clarified that stating an excessive force claim under the Eighth Amendment is not a function of "whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In *Wilkins*, the prisoner plaintiff alleged that a corrections officer, apparently angered by his request for a grievance form, had

snatched him off the ground and slammed him onto the concrete floor, then proceeded to "punch, kick, knee and choke him" until restrained by another officer. *Wilkins*, 559 U.S. at 35. The district court dismissed the prisoner's excessive-force claim, reasoning that he had failed to allege more than a *de minimis* injury, and the Fourth Circuit affirmed. But the Supreme Court reversed, shifting the "'core judicial inquiry' from the extent of the injury to the nature of the force." *Id.* at 39 (quoting *Hudson*, 503 U.S. at 7 (explaining that "[t]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury.")). Applying the principles clarified in *Wilkins* and *Hudson*, the Tenth Circuit explained that "[a]lthough the extent of the injury suffered may be instructive in determining the amount of force used, a minor injury can still support an Eighth Amendment claim if the force used was 'nontrivial and was applied maliciously and sadistically to cause harm.'" *Graham v. Sheriff of Logan Cty.*, 741 F.3d 1118, 1123 (10th Cir. 2013) (quoting *Wilkins*, 559 U.S. at 39).

Thus, considering the factual circumstances that properly instigate Eighth Amendment claims, Jaramillo ignores the Supreme Court and Tenth Circuit cases focusing on prison guard animus rather than seriousness of injury. Here—similarly to the allegations in *Wilkins*—the complaint makes clear that the shower takedown was a hostile retaliation by the guards in response to Jaramillo's refusal to follow orders and his flipping Crain off. The exact level of force the guards employed—as long as they used some force—in their malicious or sadistic takedown is of only secondary importance to Jaramillo's excessive force claim. As the allegations make clear, Jaramillo both knew and should have known of the facts supporting his claim—and the guards' malice on which it is based—at the time of, or very shortly after, the takedown on February 23, 2016.

7

But even analyzing their extent, Jaramillo's injuries alleged here are beyond *de minimis*. On this front, the Tenth Circuit, reviewing *Graham* and *Wilkins*, found assistance in the Supreme Court's earlier decision in *Hudson*:

> The extent of an inmate's injury is one factor in [the *Wilkins*] analysis. "In determining whether the use of force was wanton and unnecessary, it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response."

*Green v. Denning*, 465 F. App'x 804, 807 (10th Cir. 2012) (quoting *Hudson*, 503 U.S. at 7; citing *Wilkins*, 559 U.S. at 37). Here, Jaramillo alleges that the takedown caused his head to impact the ceramic floor with enough force to leave him temporarily unconscious. The guards did this despite Jaramillo having already turned the shower off, dressed, and begun to comply with instructions to return to his bunk. Taking these allegations as true, there is little doubt that the force used was anything other than excessively disproportionate to the guards' desire to have Jaramillo back in his bunk and not necessary to quell any threat. Moreover, as the following discussion of his injuries shows, Jaramillo's ails are not sufficiently distinguishable from those that the Supreme Court specifically asserted were <u>not</u> *de minimis* in *Hudson*: "bruises, swelling, loosened teeth, and a cracked dental plate." 503 U.S. at 10.

Moving to the actual injuries alleged and the impact they had on him, Jaramillo's briefing position is not reconcilable with his allegations. Facing dismissal, he now suggests that he was not subjectively aware of any non-*de minimis* injury. Indeed, he implies that he was unconscious from the moment of impact until his death. (*See* ECF No. 60, at 7 ("Once he was knocked unconscious, he had no knowledge of injury or assault and he remained disoriented for the hours

8

thereafter.")[4] The complaint says otherwise. After waking from his temporary unconscious state, Jaramillo had head pain—a lot of it—which he complained of for at least sixteen hours. It affected his vision and he worried that he was dying. When he was ignored, he continued complaining. Because of his pain and swelling, he saw two medical practitioners. But even after those visits, the "extraordinary" and "severe" pain was "unrelenting." The "throbbing" in his head was unlike anything he had ever experienced, and he couldn't touch his chin to his chest. While he may have been briefly unconscious after the shower takedown, he regained consciousness enough to seek medical attention, experience this host of physical symptoms, scrutinize the treatment he received, and scream for additional help—all for many hours following the incident. There is no doubt that he was subjectively aware of the injury giving rise to his cause of action on or before February 24, 2016. Moreover, he had an objective obligation—and plenty of information—to ascertain the cause of his injury. Only hours before, and at a time certain, two guards he can specifically identify by name had just slammed his head into the ceramic shower floor. Jaramillo's was armed with the essential facts necessary to ascertain his injury's existence and cause more than two years before he filed, and dismissal is appropriate on Claim One.

**B. Claim Two (lack of medical care) is also time-barred.**

Eighth Amendment protections extend to injuries caused by prison officials' "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). A claim of deliberate indifference includes both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). The objective prong examines whether the prisoner's medical condition was "'sufficiently serious' to be

---

[4] The notion that Jaramillo was "disoriented" from the time of this assault to his death (*see, e.g.*, ECF No. 60, at 8) was invented in his motion papers, is found nowhere in the complaint, and stands in stark contrast to his alleged actions.

9

cognizable under the Cruel and Unusual Punishment Clause." *Id.* at 753. "The subjective prong examines the state of mind of the defendant, asking whether 'the official kn[e]w of and disregard[ed] an excessive risk to inmate health or safety.'" *Al-Turki v. Robinson*, 762 F.3d 1188, 1192 (10th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)); *see also Estate of Roemer v. Johnson*, No. 17-1418, 2019 WL 1084194, at *6 (10th Cir. Mar. 7, 2019) ("In light of the objective and subjective elements of [the plaintiff's] Eighth Amendment claims, those claims accrued when he knew or had reason to know . . . that [each defendant] had acted with deliberate indifference to a known risk to [the plaintiff's] medical needs.").

Here, the pleadings conclusorily allege that the subjective prong was met as to both Baca and Crain on February 24, 2016, on which day both are said to have ignored signs of a medical emergency in their contacts with Jaramillo. (*See* Compl. ¶¶ 16–17, 25–40.) Thus, the only question becomes whether *Jaramillo* knew or had reason to know of the conditions that constituted the health risk. To that end, Jaramillo's objection acknowledges that he displayed, and was aware of, the serious medical symptoms elucidated above, but he hangs his hat on the argument that he "had no concept of the significance of" those symptoms. (ECF No. 60, at 12.)

Jaramillo's objection misses the point, and the non-binding authority he cites does him no favors. In *Devbrow v. Kalu*, the Seventh Circuit grappled with when the limitations period began to run on a prisoner deliberate indifference claim involving belatedly diagnosed prostate cancer. 705 F.3d 765, 768 (7th Cir. 2013). The plaintiff filed suit less than two years after his diagnosis but more than two years after the defendants ordered his biopsy. *Id.* at 767. The defendants argued that the claims were untimely because their ordering of the biopsy was an act which ended any previously deliberate indifference to the plaintiff's condition. *Id.* But after first noting that "[t]he tort claim most closely analogous to a deliberate-indifference claim premised on a

10

medical error is medical malpractice," the Seventh Circuit found that the plaintiff only learned of his injury and its cause when the disease was diagnosed, and the statute had not yet begun to run when the defendants' deliberate indifference had purportedly abated. *Id.* at 768–69.[5] Using this authority, Jaramillo focuses on his ultimate harm, rather than the date of the injury, surmising that "[u]ntil [he] was dead, he could have possessed no concept whatsoever of any injury caused by Defendant Baca's and Crain's failure to get him medical treatment." (*Id.*) The Court disagrees.

Even though *Devbrow*, as a latent injury case, is *factually* distinguishable from this one, the recommendation here insinuates that the Seventh Circuit's *legal* approach is inconsistent with the firmly established law in the Tenth Circuit. (ECF No. 59, at 9.) Whether or not that is technically correct is a question for another day, as both circuits inquire into "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 557 (10th Cir. 1999); *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (identical language); *Lawshe v. Simpson*, 16 F.3d 1475, 1478 (7th Cir. 1994) (same); *see also Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 1993) ("Our task, therefore, is to identify the constitutional violation and locate it in time."). *Devbrow* clarified that it relied on the moment of diagnosis because, in that case, the diagnosis was a better indicator of when the plaintiff reasonably learned of his injury than some "*intangible* harm to the prisoner's

---

5   As Jaramillo points out in his objection, Magistrate Judge Tafoya (who provided the recommendation here) previously relied on *Devbrow* in *Richardson v. Stock*, No. 13-CV-00606-RM-KMT, 2014 WL 7530320 (D. Colo. Feb. 10, 2014), *report and recommendation adopted as modified*, No. 13-CV-00606-RM-KMT, 2015 WL 160949 (D. Colo. Jan. 13, 2015). There, the magistrate judge determined the accrual date of a diabetic's deliberate indifference claim to be when his foot was amputated, rather than when the doctor had taken him off insulin or failed to provide preventative foot care. *Id.* at *5. But although she found that the *Richardson* plaintiff's claims were not time-barred against the defendant at issue, the magistrate judge also decided that dismissal was proper based on the plaintiff's failure to exhaust his administrative remedies. *Id.* at *7. The plaintiff objected on the exhaustion determination, and this Court adopted the recommendation (as modified). 2015 WL 160949, at *8. Therefore, this Court was not faced with the statute of limitations question in *Richardson* and Jaramillo's note concerning this Court's adoption of the recommendation there is inapposite to the present inquiry. (*See* ECF No. 60, at n.2.)

constitutional rights." *Devbrow*, 705 F.3d at 768. Along similar lines, cases in this circuit that focus on the date of diagnosis have done so to the extent that "there is no single accrual date" and the diagnosis "brought into focus the profound constitutional inadequacy of [the] defendants' antecedent treatment." *Lawson v. Okmulgee Cty. Criminal Justice Auth.*, 726 F. App'x 685, 691 (10th Cir. 2018) (latent injury case affirming district court's dismissal on limitation grounds and suggesting that that the plaintiff's accrual could have been much earlier than the diagnosis). Unlike latent-injury cases, "[c]ases which involve a traumatic injury . . . pose little difficulty in determining the commencement of the limitations period." *Matson v. Burlington N. Santa Fe R.R.*, 240 F.3d 1233, 1235 (10th Cir. 2001) (comparing traumatic with latent injury).

Here, Jaramillo's assertions that he could not have reasonably discovered the cause of his medical condition until his death or beyond are unavailing. He was not the victim of a fluid, ongoing, intangible, or difficult-to-ascertain injury, but of a sudden, identifiable impact. Even if the shower incident did not bring his injury into focus, the Court is comfortable that his post-treatment behavior on February 24, 2016 demonstrates an objectively reasonable understanding that he was injured. As the pleadings make plain, Jaramillo had this understanding at least concurrent with the alleged deliberate indifference of Baca and Crain. Therefore, as is apparent on the face of the complaint, Claim Two must be dismissed as time-barred.

## III. CONCLUSION

Based on the foregoing, the Court **OVERRULES** Plaintiff's objections to the recommendation of the magistrate judge (ECF No. 60); **ADOPTS** the recommendation of the magistrate judge (ECF No. 59); **GRANTS** Baca's motion to dismiss (ECF No. 26); and **GRANTS** Cardinal's and Crain's motion to dismiss (ECF No. 29). Jaramillo's complaint (ECF No. 1) is **DISMISSED** with prejudice. The Clerk shall enter judgment as set forth herein in favor of Baca, Cardinal, and Crain and close this case.

DATED this 29th day of March, 2019.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge